## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br><br> FREEDMAN SEATING COMPANY <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )    Case No.: 24-cv-8968 |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NAVIGATORS SPECIALTY INSURANCE COMPANY, ("Navigators"), by and through its attorneys, Michael J. Duffy and Joseph M. Dybisz of Wilson Elser Moskowitz Edelman & Dicker LLP, for its Declaratory Judgment Complaint against FREEDMAN SEATING COMPANY ("Freedman") states as follows:

### STATEMENT OF THE CASE

1. This action seeks a declaration, pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act), that Navigators owes no insurance coverage obligations to Defendant for the claims raised in the lawsuit styled: *Anthony Benson and Ulysses Ballard v. Freedman Seeding Company*, Case No. 2024-L-4606, (Circuit Court of Cook County, Law Division) ("Underlying Action"). A copy of the complaint filed in the Underlying Action ("Complaint") is attached as "**Exhibit A.**"

### PARTIES

1

2.      Navigators is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

3.      Freedman is an Illinois corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Navigators and Freedman do business within the geographical boundaries of this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because the Navigators issued insurance policies to Freedman that were delivered within the geographical boundaries of this District and the Underlying Action for which coverage is sought was commenced within the geographical boundaries of this District.

## FACTS

### *THE MIMS ACTION*

6.       Ulysses Ballard ("Underlying Plaintiff") was part of the class of plaintiffs in the lawsuit styled: *Joshua Mims v. Freedman Seeding Company*, Case No. 2018-CH-9806, Cook County (the "*Mims* Action"). The *Mims* Action brought claims against Freedman alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

7.      Freedman and Navigators executed a confidential settlement agreement ("Mutual Release") in connection with coverage for claims in the *Mims* Action.

2

8.     The Mutual Release released Navigators from all actual or potential future claims for coverage with respect to the claims at issue in the *Mims* Action under any policy of insurance issued by Navigators.

9.     The parties to the *Mims* Action reached a Class Settlement in January 2024.

10.     Underlying Plaintiff opted out of the Class Settlement in the *Mims* Action. In this regard, the Underlying Action alleges in part:

> The statute of limitations applicable to violations of the BIPA is five years. *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801 ¶ 5. **However, the statute of limitations applicable to [Underlying Plaintiff] … a putative member of the settlement class in Mims v. Freedman Seating Company, 2018 CH 09806 (Cir. Ct. of Cook County, filed August 1, 2018)**, was tolled by the filing of *Mims*. *American Pipe & Construction Co., et al v. Utah, et al*, 414 U.S. 538, 553-54 (1974); *Steinberg v. Chicago Medical School*, 69111.2d 320, 324 (1977). [Underlying Plaintiff has] exercised [his] rights to exclude [himself] from the *Mims* settlement class.

(Bold and italics added for emphasis). *See* Ex. A.

### THE UNDERLYING ACTION

11.     On May 29, 2024, Underlying Plaintiff"[1] filed the Underlying Action against Freedman alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA").

12.     The three-count complaint ("Complaint") alleges that Freedman used biometric timeclocks and related cloud-based software to monitor and track its hourly workers' time by using a scan of their fingerprint or hand geometry. *See* Ex. A.

13.     The Complaint alleges that Underlying Plaintiff worked at Freedman's premises from August 2016 until June 2022. Underlying Plaintiff was required to scan his fingerprints and/or hand geometry into Freedman's biometric time clock system each time they needed to "log-in"

---

[1] The other named Plaintiff, Anthony Benson, has since been dismissed from the Underlying Action.

and "log-out" of Freedman's time clock system for the purpose of authenticating employment related timekeeping. *See* Ex. A.

14. The biometric scanning technology utilized for taking Underlying Plaintiffs' (collectively) fingerprints and/or other biometric identifiers to "log-in" and "log-out" of Freedman's time clock system allegedly collected, captured, used, disseminated, and/or stored Underlying Plaintiff's unique fingerprints, biometric identifiers, and/or biometric information. *See* Ex. A.

15. Freedman allegedly never informed Underlying Plaintiff of the specific limited purpose or length of time for which the Freedman used, collected, stored or otherwise obtained Plaintiff's biometric identifiers or biometric information. Similarly, Freedman never informed Underlying Plaintiff of any biometric data retention policy it developed. Moreover, Underlying Plaintiff never signed a written release allowing Freedman to collect, capture, or otherwise obtain his biometric information. *See* Ex. A.

16. The Complaint asserts three counts: Count I – Violation of §15(a) of BIPA for failure to institute, maintain, and adhere to a publicly available retention schedule; Count II – Violation of §15(b) of BIPA for failure to obtain informed written consent and release before obtaining biometric identifiers or information; and Count III – Violation of §15(d) of BIPA for disclosure of biometric identifiers and information without obtaining consent. *See* Ex. A.

17. The Underlying Plaintiff seeks an Order awarding the following relief:

    a)    A declaration that Freedman violated Section 15(a) of BIPA;

    b)    A declaration that Freedman violated Section 15(b) of BIPA;

    c)    A declaration that Freedman violated Section 15(d) of BIPA;

d)      Requiring Freedman to comply with BIPA's requirements for the collection, storage, use, and retention and destruction of biometric identifiers and biometric information;

e)      Requiring Freedman to destroy biometric identifiers or biometric information pursuant to and in compliance with Section 15(a) of BIPA;

f)      Awarding liquidated damages of $1,000 for each negligent violation of Sections 15(a), 15(b), and 15(d) of BIPA pursuant to § 740 ILCS 14/20(1);

g)      Awarding liquidated damages of $5,000 for each intentional and/or reckless violation of Sections 15(a), 15(b), and 15(d) of BIPA pursuant to § 740 ILCS 14/20(2);

h)      An award of attorney's fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3); and

i)      Enjoining Freedman from further violations of Sections 15(a), 15(b), and 15(d) of BIPA.

*See* Ex. A.

### THE POLICIES

18.      Navigators issued a commercial general liability insurance policy bearing policy number CH15NP30A3SUPNC to Named Insured, Freedman Seating Company with effective dates of December 1, 2015 to December 1, 2016 ("2015-16 Policy"), renewed for the term December 1, 2016 to December 1, 2017 ("2016-17 Policy") and subsequently renewed for the terms December 1, 2017 to December 1, 2018 ("2017-18 Policy"), December 1, 2018 to December 1, 2019 ("2018-19 Policy"), December 1, 2019 to December 1, 2020 ("2019-20 Policy"), December 1, 2020 to December 1, 2021 ("2020-21 Policy"), December 1, 2021 to December 1, 2022 ("2021-22 Policy"), December 1, 2022 to December 1, 2023 ("2022-23 Policy"), and December 1, 2023 to December 1, 2024 ("2023-24 Policy") (collectively, the "Policies").

19.     Below is a chart reflecting the Policies. The Policies are attached as exhibits in accordance with the chart below.

| BUSINESS LIABILITY POLICIES | | | |
|---|---|---|---|
| Attached as Exhibit | Effective Dates | Policy No. | Limit |
| B | 12/01/2015 to 12/01/2016 | CH15NP30A3SUPNC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury; $2 million general aggregate. |
| C | 12/01/2016 to 12/01/2017 | CH16NP30A3SUPNC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury; $2 million general aggregate. |
| D | 12/01/2017 to 12/01/2018 | CH17NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |
| E | 12/01/2018 to 12/01/2019 | CH18NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); |

| | | | |
|---|---|---|---|
| | | | $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |
| **F** | 12/01/2019 to 12/01/2020 | CH19NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |
| **G** | 12/01/2020 to 12/01/2021 | CH20NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |
| **H** | 12/01/2021 to 12/01/2022 | CH21NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |

| | | | |
|---|---|---|---|
| **I** | 12/01/2022 to 12/01/2023 | CH22NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |
| **J** | 12/01/2023 to 12/01/2024 | CH23NP30A3SUPIC | $1 million bodily injury and property damage (each occurrence); $1 million personal and advertising injury (each occurrence); $2 million general aggregate. |

20.     Subject to all of their terms, the Policies provide certain Commercial General

Liability coverage, and state, in part:

> *Throughout this policy the words "you" and "your" refer to the **first named insured**, and any other person or entity qualifying as a named insured under this policy. The words "we", "us" and "our" refer to the company listed in the Declarations providing this insurance.*
>
> *The word "insured" means any person or organization qualifying as such in **SECTION II. WHO IS AN INSURED**, but only to the extent outlined under that section. Words and phrases other than headings that appear in **bold type** or quotation marks have special meaning. Refer to **SECTION V. POLICY DEFINITIONS**.*

**SECTION I. COVERAGES AND COVERAGE EXCLUSIONS**

**Coverage 1. General Liability**

**A.      Coverage Part 1.A. Bodily Injury and Property Damage**

**1.      Insuring Agreement**

8

    **a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. This insurance applies only if the **bodily injury** or **property damage**:*

        **(1)** *is caused by an **occurrence** that takes place in the **coverage territory**; and*

        **(2)** *occurs during the **policy period**.*

    *Our rights and duties with respect to the investigation of any **occurrence**, or the defense or settlement of any **claim** or **suit** seeking damages to which this insurance applies, are set forth in subsection **I. Defense** in **Coverage 1. General Liability**. No other obligation or liability to pay sums or perform acts or services are covered unless explicitly provided for under subsection **J. Supplementary Payments** in **Coverage 1. General Liability**.*

    **b.** *Any **bodily injury** or **property damage** to which this coverage part applies or is held to apply is subject to paragraphs 9.a. through 9.c., inclusive, of **SECTION III. LIMITS OF LIABILITY**.*

    **c.** *Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.*

**B.**     ***Coverage Part 1.B. Personal and Advertising Injury Liability***

    ***1.***     ***Insuring Agreement***

    *We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. This insurance applies to **personal and advertising injury** caused by an offense arising out of your business, but only if the offense was committed in the **coverage territory** during the **policy period**.*

    *Our rights and duties with respect to the investigation, defense or settlement of any **claim** or **suit** seeking damages to which this insurance applies are set forth in subsection **I. Defense** in **Coverage 1. General Liability**. No other obligation or liability to pay sums or perform acts or services are covered unless explicitly provided for under subsection **J. Supplementary Payments** in **Coverage 1. General Liability**.*

*See* Exs. B-J.

21.     The 2015-16 Policy contains certain Excess Liability coverage which states:

**Coverage 3. Excess Liability**

**A.      Insuring Agreement**

**1.**      *We will pay on behalf of the insured and in excess of **underlying limits** those sums the insured becomes legally obligated to pay as damages for **excess loss** to which this insurance applies. This insurance applied only if:*

**a.**      *the **excess loss** is caused by an **event** that takes place in the **coverage territory**;*

**b.**      *the **excess loss** occurs during the **policy period**; and*

**c.**      *the **controlling underlying insurance** applies to the **excess loss**.*

**2.**      *If an aggregate limit of **controlling underlying insurance** is exhausted by the payment of judgments or settlements to which this insurance applies, or would have applied but for the amount of the damages, this insurance will apply in place of the **controlling underlying insurance** until we have paid our applicable limits of liability.*

**3.**      *The amount we pay is limited. See **SECTION III. LIMITS OF LIABILITY**.*

*See* Ex. B.

22.     The 2015-16 Policy's Excess Liability coverage contains the following pertinent exclusions:

**C.      Coverage 3. Exclusions**

*The exclusions of the **controlling underlying insurance** are hereby made part of this policy. If an inconsistency or contradiction exists between an exclusion of this policy and an exclusion of the **controlling underlying insurance**, the exclusion of this policy will apply. However, in no case will coverage be excluded by the **controlling underlying insurance** and not be excluded by this policy.*

*This insurance does not apply to any **claims**, damages, **suits**, **excess loss**, or other liability:*

**1. No Coverage in Underlying Insurance**

*to which **controlling underlying insurance** does not apply.*

**2. Sublimit of Coverage in Underlying Insurance**

*For which coverage is provided by **controlling underlying insurance** at limits less than the limits of insurance applicable to other coverage provided by the **controlling underlying insurance** and less than the **underlying limits**.*

*See* Ex. B.

23.     The 2015-16 and 2016-17 Policies also contain the following exclusions:

**2.      Coverage Part 1.B. Exclusions**

*This Coverage Part 1.B does not apply to:*

**a.   Knowing Violation of Rights of Another**

***personal and advertising** injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.*

\* \* \*

**c.   Material Published Prior to Policy Period**

***personal and advertising injury** arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the **policy period**.*

\* \* \*

**o.   Distribution of Material in Violation of Statutes**

***personal and advertising injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate:*

***(1)** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or*

*(2)* *the CAN-SPAM Act of 2003, including any amendment of or addition to such law, or*

*(3)* *any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.*

**p. Expected or Intended Injury**

***personal or advertising injury*** *expected or intended from the standpoint of the insured.*

*See* Exs. B-C.

24.     The 2017-18, 2018-19, 2019-20, 2020-21, 2021-22, 2022-23, and 2023-24 Policies also contain the following exclusions:

**2.     Coverage Part 1.B. Exclusions**

*This Coverage Part 1.B. does not apply to:*

**a. Fines and Penalties**

*fines or penalties, or that portion of any award or judgment caused by trebling or multiplication of actual damages under state or federal law.*

**c. Knowing Violation of Rights of Another**

***personal and advertising injury*** *caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would* ***inflict personal and advertising injury***.

\* \* \*

**e. Material Published Prior to Policy Period**

***personal and advertising injury*** *arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the* ***policy period***.

\* \* \*

**q. Recording and Distribution of Material or Information in Violation of Law**

12

*personal and advertising injury* arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** the CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**r. Expected or Intended Injury**

*personal or advertising injury* expected or intended from the standpoint of the insured.

**s. Access or Disclosure of Confidential or Personal Information and Electronic Data-related Liability**

*personal and advertising injury* arising out of:

**(1)** any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data, including but not limited to access to or disclosure of any person's or organization's confidential, personal or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other cost or expense

*incurred by you or others arising out of that which is described in paragraph (1) or (2) above.*

*As used in this exclusion, electronic data means, regardless of data storage method or host, or manner of transmission, information, facts, documents, images or programs created or stored with the assistance of computer software, computer systems and/or computer applications, or any other media which are used with electronically controlled equipment.*

*See* Exs. D-J.

25.     The Policies provide the following definitions:

**SECTION V. POLICY DEFINITIONS**

\* \* \*

**6.   *Bodily injury*** *means the following injury(ies) as sustained by any person, including, if applicable, death resulting therefrom:*

 **a.**   *physical injury, sickness, disease, or illness, including, but only in the presence of at least one of the aforesaid physical injuries, the cost of medical monitoring; and*

 **b.**   *mental anguish, emotional distress, or shock.*

\* \* \*

**9.   *Claim(s)*** *mean(s) a written demand or notice of a **suit**, **data compromise suit** or **network security liability suit** received by an insured and alleging liability or responsibility on the part of the insured for:*

 **a.**   *with respect to **Coverage 1. General Liability**, damage to which **Coverage 1. General Liability** applies; or*

 **b.**   *with respect to **Coverage 2. Pollution Liability**, **bodily injury**, **property damage**, **environmental damage** or **cleanup costs** caused by a **pollution incident** to which **Coverage 2. Pollution Liability** applies; or*

 **c.**   *with respect to **Coverage 3. Cyber & Data Compromise Liability**, damages to which this **Coverage 3. Cyber & Data Compromise Liability** applies.*

**10.   *Claim expense(s)*** *mean(s):*

 **a.**   *all reasonable and necessary fees charged by legal counsel designated by us, or, with our prior written consent, by you; and*

**b.** all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense, settlement or appeal of any **claim**, **suit** or other legal proceeding arising in connection therewith, if incurred by us, or, with our prior written consent, by you.

**Claim expenses** do not include:

**a.** the use of a Third Party Administrator (TPA) to process any **claims** or for the maintenance of a **claims** database, or in-house counsel or outside vendors for internal administrative control of **claims**, unless such expenses are approved and consented to in writing by us;

**b.** any other charges by an insured for any time spent in cooperating in the defense and investigation of any **claim**, **suit**, or circumstance which might lead to a **claim** or **suit**, unless as outlined expressly elsewhere in this policy;

**c.** **data compromise defense costs**; or

**d.** **network security liability claim expenses**.

\* \* \*

**33.  Event**(s) mean(s) an accident, incident, **occurrence**, offense, or wrongful act.

\* \* \*

**37.  First named insured** means the first person, organization or entity in the list of named insureds stated in Item 1. of the Declarations.

\* \* \*

**60. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**63.  Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

\*\*\*

**e.** oral or written publication, in any manner, of material that violates a person's right of privacy;

\* \* \*

**67.  Policy period** means the period set forth in Item 2. of the Declarations, or if this policy is cancelled by either the **first named insured** or by us, any shorter period as a result of such cancellation.

\* \* \*

**75.** *Property damage* means:

    **a.** *Solely with respect to* ***Coverage 1. General Liability****:*

        **(1)** *physical injury to tangible property, including any resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

        **(2)** *loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the* ***occurrence*** *that caused it; or […]*

* * *

**80.** *Suit(s) mean(s) a civil proceeding in which damages because of* ***bodily injury****,* ***property damage****,* ***environmental damage****,* ***personal and advertising injury****, any act, error or omission, or other injury or damage to which this insurance applies, are alleged.* ***Suit*** *includes:*

    **a.** *an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our written consent; or*

    **b.** *any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our written consent.*

    ***Suit*** *does not include* ***network security liability suit*** *or* ***data compromise suit****.*

*See* Exs. B-J.

26. The 2015-16 Policy also contains the following definitions pertinent to Excess Liability Coverage:

* * *

**10.** *Controlling underlying insurance* means either:

    **a.** *any coverage part listed in* ***Coverage 1. General Liability*** *of this policy provided also that such coverage part has been purchased and is listed in the Schedule of Underlying Insurance in Item 4 of the Declarations; or*

    **b.** *a policy listed in the Schedule of Underlying Insurance in Item 4 of the Declarations, or its renewal or replacement, which applies to the* ***excess loss****, or would have applied but for:*

        **(1)** *an exclusion in that policy; or*

        **(2)** *the exhaustion or erosion of an aggregate limit of insurance.*

> *If more than one policy is listed in the Schedule of Underlying Insurance in Item 4 of the Declarations, the **controlling underlying insurance** is the policy which applies to the **excess loss** or would have applied but for reasons (1) or (2) listed immediately above.*

> \* \* \*

> **22. Event(s)** *mean(s) an accident, incident, **occurrence**, offense, wrongful act or other **excess loss** causing circumstance defined by and to which the **controlling underlying insurance** applies.*

> **23. Excess loss(es)** *mean(s) **bodily injury**, **property damage**, **environmental damage, personal and advertising injury**, or other injury or damage defined by and to which the **controlling underlying insurance applies**.*

> \* \* \*

> **57. Underlying limits** *means the amounts shown in Item 4. Schedule of Underlying Insurance in the Declarations as the minimum limits of insurance to be provided by **controlling underlying insurance**.*

*See* Ex. B.

### TENDER AND ACTUAL CONTROVERSY

27.     Freedman tendered the Underlying Action seeking defense and indemnity from Navigators.

28.     Navigators denies that it owes Freedman any defense or indemnity obligations under the Policies.

29.     An actual justiciable controversy exists between Navigators and Freedman as to the availability of insurance to Freedman under the Policies. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto with respect to any claim for defense and indemnity of the Underlying Action, and to give such other and further relief that may be necessary.

### COUNT I
### Mutual Release and Settlement

30.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 29 above as if fully set forth herein.

31.     Freedman and Navigators executed a confidential settlement agreement ("Mutual Release") in connection with the lawsuit styled: *Joshua Mims v. Freedman Seeding Company*, Case No. 2018-CH-9806, Cook County (the "*Mims* Action").

32.     The Mutual Release released Navigators from any and all actual or potential liability for coverage with respect to the claims at issue in the *Mims* Action under any policy of insurance issued by Navigators.

33.     Underlying Plaintiff was part of the Class of plaintiffs in the *Mims* Action when the Mutual Release was executed and until he recently opted out of the Class Settlement. In this regard, the Underlying Action alleges in part:

> The statute of limitations applicable to violations of the BIPA is five years. *Tims v. Black Horse Carriers, Inc*. 2023 IL 127801 ¶ 5. ***However, the statute of limitations applicable to [Underlying Plaintiff] … a putative member of the settlement class in Mims v. Freedman Seating Company, 2018 CH 09806 (Cir. Ct. of Cook County, filed August 1, 2018)***, was tolled by the filing of *Mims*. *American Pipe & Construction Co., et al v. Utah, et al*, 414 U.S. 538, 553-54 (1974); *Steinberg v. Chicago Medical School*, 69111.2d 320, 324 (1977). [Underlying Plaintiff has] exercised [his] rights to exclude [himself] from the *Mims* settlement class.

(Bold and italics added for emphasis). *See* Ex. A.

34.     Pursuant to the terms of the Mutual Release, Navigators owes no coverage for the claims raised in *Mims* Action, including those now continuing to be pursued in the Underlying Action.

35.     Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman under the Policies for the claims in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT II
## Access Or Disclosure Of Confidential Or Personal Information Exclusion

36.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 35 above as if fully set forth herein.

37.     Exclusion 1.B.(s), entitled Access Or Disclosure Of Confidential or Personal Information, bars coverage for "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information. *See* Exs. D-J.

38.     The Underlying Action seeks damages arising out of access to a person's confidential or personal information.

39.     Accordingly, the Access Or Disclosure Of Confidential or Personal Information Exclusion bars coverage for the claims in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT III
## Recording and Distribution Of Material Or Information In Violation Of Law Exclusion

40.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 39 above as if fully set forth herein.

41.     Exclusion 1.B.(q), entitled Recording and Distribution Of Material Or Information In Violation Of Law, bars coverage for, among other things, "personal and advertising injury"

"arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." *See* Exs. D-J.

42.     The Underlying Action alleges that Freedman violated BIPA, which is a state statute that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information. *See* Ex. A.

43.     Accordingly, the Recording and Distribution Of Material Or Information In Violation Of Law Exclusion bars coverage for the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.      A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

<u>**COUNT IV**</u>
<u>**Distribution of Material in Violation of Statutes Exclusion**</u>

44.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 43 above as if fully set forth herein.

45.     Exclusion 1.B.(o), entitled Distribution of Material in Violation of Statutes, bars coverage for, among other things, "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." *See* Exs. B-C.

46. The Underlying Action alleges that Freedman violated BIPA, which is a state statute that addresses, prohibits, or limits the sending, transmitting, communicating or distribution of material or information. *See* Ex. A.

47. Accordingly, the Distribution Of Material In Violation Of Statutes Exclusion bars coverage for the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A. A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B. For all such just and equitable relief, including costs of this suit.

## COUNT V
## No "Personal and Advertising Injury" Alleged

48. Navigators restates and incorporates the allegations contained in paragraphs 1 – 47 above as if fully set forth herein.

49. The Policies define "personal and advertising injury" as, among other things, the "[o]ral, written or electronic publication of material that violates a person's right of privacy." *See* Exs. B-J.

50. The allegations in Count I in the Underlying Action seek damages arising from Freedman's alleged failure to institute, maintain, and adhere to a publicly available retention schedule in violation of BIPA. *See* Ex. A.

51. The allegations in Count II in the Underlying Action seek damages arising from Freedman's alleged failure to obtain written consent and a release before obtaining biometric identifiers or information. *See* Ex. A.

52.    Counts I and II in the Underlying Action do not allege publication of material that violates a person's right of privacy and therefore do not allege "personal and advertising injury" as defined in the Policies.

53.    Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman for the claims against it in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.    A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.    For all such just and equitable relief, including costs of this suit.

**COUNT VI**
**Material Published Prior to Policy Period Exclusion**

54.    Navigators restates and incorporates the allegations contained in paragraphs 1 – 53 above as if fully set forth herein.

55.    Exclusion 1.B.(e), entitled Material Published Prior to Policy Period, bars coverage for any "personal and advertising injury" arising out of any oral, written, electronic, or any other manner of publication of material whose first publication took place before the beginning of a given policy period.[2] *See* Exs. B-J.

56.    To the extent the Underlying Action alleges "personal and advertising injury" arising out of any oral, written, electronic, or any other manner of publication of material, which Navigators denies, this Exclusion bars coverage for "personal and advertising injury" arising from any publication of material occurring before the beginning of a given policy period.

57.    Accordingly, the Material Published Prior to Policy Period Exclusion bars coverage for the claims made against Freedman in the Underlying Action.

---

[2] Numbered as Exclusion 1.B.(c) in the 2015-16 and 2016-17 Policies.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT VII
## Fines and Penalties Exclusion

58.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 57 above as if fully set forth herein.

59.     Exclusion 1.B.(a), entitled Fines and Penalties, bars coverage for fines or penalties, or that portion of any award or judgment caused by trebling or multiplication of actual damages under state or federal law. *See* Exs. D-J.

60.     The Underlying Action seeks to recover sums falling within this provision and coverage is precluded for said sums.

61.     Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman for the claims against it in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

## COUNT VIII
## Knowing Violation of Rights of Another Exclusion

62.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 61 above as if fully set forth herein.

63.    Exclusion 1.B.(c), entitled Knowing Violation of Rights of Another, bars coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."[3] *See* Exs. B-J.

64.    The Underlying Action alleges that Freedman knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet failed to comply with BIPA's provisions. *See* Ex. A.

65.    Accordingly, the Knowing Violation of Rights of Another Exclusion bars coverage for the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.    A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.    For all such just and equitable relief, including costs of this suit.

## COUNT IX
## Expected or Intended Injury Exclusion

66.    Navigators restates and incorporates the allegations contained in paragraphs 1 – 65 above as if fully set forth herein.

67.    Exclusion 1.B.(r), entitled Expected or Intended Injury, bars coverage for "personal and advertising injury" expected or intended from the standpoint of the insured.[4] *See* Exs. B-J.

68.    The Underlying Action alleges that Freedman knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet failed to comply with BIPA's provisions. *See* Ex. A.

---

[3] Numbered as Exclusion 1.B.(a) in the 2015-16 and 2016-17 Policies.
[4] Numbered as Exclusion 1.B.(p) in the 2015-16 and 2016-17 Policies.

69.     Accordingly, the Expected or Intended Injury Exclusion bars coverage for the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.      A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

## COUNT X
### No Allegations of "Bodily Injury" or "Property Damage" Caused by an "Occurrence"

70.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 69 above as if fully set forth herein.

71.     Subject to all of their terms, the Policies provide certain coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies. *See* Exs. B-J.

72.     The claims in the Underlying Action do not concern claims for damages because of "bodily injury" or "property damage" caused by an "occurrence." *See* Ex. A.

73.     Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman under the Policies for the claims in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.      A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.      For all such just and equitable relief, including costs of this suit.

## COUNT XI (In the Alternative to Count X)
### No Coverage for "Bodily Injury" or "Property Damage" Caused by an "Occurrence" Prior to Policy Period

74.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 73 above as if fully set forth herein.

75.     Subject to all of their terms, the Policies provide certain coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," but only for those occurrences taking place during a given "Policy Period," as those terms are defined in the Policies. *See* Exs. B-J.

76.     To the extent that the Underlying Action alleges "bodily injury" or "property damage" caused by an "occurrence," which Navigators denies, coverage is precluded for any "occurrence" that took place before a given "Policy Period."

77.     Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman under the Policies for the claims in the Underlying Action.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

<u>**COUNT XII**</u>
<u>**No Coverage In Underlying Insurance Exclusion (2015-16 Policy)**</u>

78.     Navigators restates and incorporates the allegations contained in paragraphs 1 – 77 above as if fully set forth herein.

79.     The 2015-16 Policy contains the exclusion entitled No Coverage in Underlying Insurance that precludes Excess Liability Coverage to which the "controlling underlying insurance" does not apply. *See* Ex. B.

80.     Coverage is precluded for the claims raised in the Underlying Action under the 2015-16 Policy's "controlling underlying insurance" (as that term is defined in the policy) pursuant to its terms, conditions, and exclusions.

81.     Accordingly, Navigators does not owe any defense or indemnity obligations to Freedman for the claims in the Underlying Action under the Excess Liability Coverage.

WHEREFORE, Plaintiff Navigators prays this Court enter the following relief:

A.     A declaration finding Navigators owes no duty to defend or indemnify Freedman for the claims in the Underlying Action under the Policies; and

B.     For all such just and equitable relief, including costs of this suit.

Respectfully Submitted,

By: /s/ Michael J. Duffy
         Lead Attorney for Navigators Specialty
         Insurance Company

Michael J. Duffy
Joseph M. Dybisz
Wilson Elser Moskowitz Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, Illinois 60603
312.704.0550 (Main)
Michael.Duffy@wilsonelser.com
Joseph.Dybisz@wilsonelser.com