# EXHIBIT A

FILED
4/26/2024 3:54 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L004606
Calendar, Q
27448680

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| ANTHONY BENSON and ULYSSES BALLARD,<br><br>Plaintiffs,<br><br>vs.<br><br>FREEDMAN SEATING COMPANY,<br><br>Defendant. | Case No.:<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

ANTHONY BENSON and ULYSSES BALLARD (collectively "Plaintiffs"), through counsel, for their complaint against Defendant FREEDMAN SEATING COMPANY, ("Defendant"), state as follows:

### NATURE OF THE CASE

1. This is an action to recover statutory damages arising out of Defendant's unlawful collection, use, retention and disclosure of the personal biometric identifiers and biometric information of Plaintiffs in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 (2008).

### THE PARTIES

2. Each Plaintiff is a natural person and is domiciled in Illinois.

3. Defendant is an Illinois corporation and maintains its registered agent at 55 W. Monroe St., Suite 1100, Chicago, IL 60603.

4. Defendant is a seat and seating related product engineering and manufacturing company.

## JURISDICTION AND VENUE

5. Defendant operates and maintains its principal places of business at 4545 W. Augusta Blvd, Chicago, IL 60651.

6. This Court has personal jurisdiction over Defendant because Defendant is an Illinois corporation.

7. Defendant is a resident of Cook County because, at all relevant times, Defendant did, and continues to do substantial business in Cook County, and thus venue is proper in Cook County.

## RELEVANT FACTS

8. Defendant employed Plaintiff Anthony Benson ("Benson") from July 2018 until August 2022 at its principal place of business.

9. Defendant employed Plaintiff Ulysses Ballard ("Ballard") from August 2016 until June 2022 at its principal place of business.

10. Non-Party Paycom Payroll, LLC ("Paycom") is a provider of cloud-based human resources technology and payroll services. Paycom offers biometric timeclocks and related cloud-based software that enable businesses to track their hourly workers' time by using a biometric finger scanner. Paycom provides its biometric timekeeping system to numerous workplaces across Illinois, including Plaintiffs' former employer, Defendant.

11. When Plaintiffs were initially hired by Defendant, they were required to enroll Defendant's Paycom biometric time clock system (time clock and timekeeping databases) using a scan of their fingerprint or hand geometry.

12. During Plaintiffs' employment with Defendant, Defendant used the Paycor, biometric time clock system that required Plaintiffs to scan their facial geometry to log in and out

of Defendant's time clock system.

13. Defendant's time clock system was used exclusively for the purpose of identifying and authenticating employees for employment related timekeeping.

14. Biometric time clock systems capture and process biometric data to record employee attendance.

15. These systems can operate in different ways, depending on how they capture, store, and verify biometric data. The two primary methods are: Local Server Verification and Third-Party Server Verification.

16. Under the first method, the employee's biometric data is captured by the time clock at the employer's place of business and is stored on a local server maintained by the employer. When the employee clocks in or out, the time clock system compares the scanned biometric data with the stored data on the local server to verify the employee's identity.

17. Under the second method, the employee's biometric data is captured by the time clock at the employer's place of business, but this data is disseminated, disclosed, and/or redisclosed to a third-party payroll company server for verification. The third-party payroll company system compares the transmitted biometric data with a stored copy to verify the employee's identity.

18. Under either method, the employer is involved in the capture, collection, and possession of biometric data.

19. Defendant required Plaintiffs to scan their fingerprint or hand geometry using Defendant's time clock system at the start and conclusion of each working shift, and sometimes for lunch breaks, while Plaintiffs were employed with Defendant.

20. Defendant's time clock system captured, collected, used, stored or otherwise

obtained a scan of Plaintiffs' fingerprint or hand geometry for purposes of time tracking and employee authentication.

21. Alternatively, Defendant's time clock system captured, collected, used, stored or otherwise obtained an encrypted mathematical representation of Plaintiffs' fingerprint or hand geometry for purposes of time tracking and employee authentication.

22. In either event, Defendant's time clock system used, collected, stored or otherwise obtained Plaintiffs' unique "biometric identifier" or "biometric information" as both terms are defined below.

23. Defendant's time clock system captured, collected or otherwise obtained Benson's fingerprints or hand geometry no less than 2,000 times while he was employed by Defendant.[1]

24. Defendant's time clock system captured, collected or otherwise obtained Ballard's fingerprints or hand geometry no less than 2,500 times while he was employed by Defendant.[2]

25. Defendant disclosed, redisclosed, or otherwise disseminated the Plaintiffs' unique "biometric identifiers" or "biometric information" to a third-party for purposes of utilizing its payroll management services.

26. Defendant never informed Plaintiffs of the specific limited purposes or length of time for which the Defendant used, collected, stored or otherwise obtained their biometric identifiers or biometric information.

---

[1] The statute of limitations applicable to violations of the BIPA is five years. *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801 ¶ 5. However, the statute of limitations applicable to the Plaintiffs, each a putative member of the settlement class in *Mims v. Freedman Seating Company*, 2018 CH 09806 (Cir. Ct. of Cook County, filed August 1, 2018), was tolled by the filing of *Mims*. *American Pipe & Construction Co., et al v. Utah, et al*, 414 U.S. 538, 553-54 (1974); *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 324 (1977). Plaintiffs have exercised their rights to exclude themselves from the *Mims* settlement class.

[2] *Supra* n. 1

27. Similarly, Defendant never informed Plaintiffs of any biometric data retention policy it developed or whether and when it will ever permanently delete their biometric information.

28. Plaintiffs never signed a written release allowing Defendant to collect, capture, or otherwise obtain their biometric information.

29. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's repeated violations of BIPA alleged herein.

30. This lawsuit is Plaintiffs' one and only chance to obtain compensation for Defendant's violations of BIPA. Depending on how technology evolves years into the future, losing control of and ownership over very personal identifiers could have untold harmful consequences.

31. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

32. Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."[3]

33. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored;

---

[3] 740 ILCS 14/5(c).

(2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

34. BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)-(d). BIPA makes it unlawful for companies to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." Furthermore, no company may "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless":

> (1) the person or customer consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the person or customer;
>
> (3) the disclosure or redisclosure is required by state or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

*See* 740 ILCS 14/15(c)-(d).

35. For BIPA purposes, a "biometric identifier" is a personal feature that is unique to an individual and specifically includes scans of hand or face geometry, retina or iris scans, voiceprints and fingerprints. 740 ILCS 14/10.

36. BIPA separately defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based upon an individual's biometric identifier used to identify the individual." *Id.*

37. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

38. Ultimately, BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, BIPA does not limit what kinds of biometric data may be obtained, collected, sent, transmitted, or stored. Nor does BIPA limit from whom biometric data may be obtained or collected, or to whom it may be sent or transmitted. BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

39. The Illinois legislature concluded that the increased risk of future harm is a compensable loss under BIPA. *Rosenbach v. Six Flags Entm't Corp.,* 2019 IL 123186, ¶ 35, 129 N.E.3d 1197, 1206 citing 740 ILCS 14/5(c) (noting increased risk of identity theft should biometrics be compromised); *Dillon v. Evanston Hosp.,* 199 Ill. 2d 483, 507, 771 N.E.2d 357, 372 (2002) (finding risk of future injury compensable as an element of damages in medical malpractice case). The legislature's decision is particularly reasonable given that the statute of limitations on BIPA claims presumably runs from the date of the collection of biometrics, whereas the future injury may not occur until after the statute has run.

40. The Illinois Supreme Court has recognized that BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019).

41. Plaintiffs seek an award of liquidated damages due to the difficulty in quantifying their harm.

## COUNT ONE

**Violation of §15(a) of BIPA**
**[Failure to Institute, Maintain, and Adhere to Publicly Available Retention Schedule]**

42. Plaintiffs restate paragraphs 1 through 41 of the complaint as if set out here in full.

43. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention - and, importantly, deletion - policy. Specifically, these companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 15(a).

44. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS 14/10.

45. Each Plaintiff is an individual who had "biometric identifiers" (in the form of scans of fingerprints or hand geometry) collected by Defendant. *See* 740 ILCS 14/10.

46. The Plaintiffs' biometric identifiers, and all data derived from them, including any mathematical representations of the biometric identifiers, were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

47. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 15 (a).

48. Defendant failed to make any written policy establishing a retention schedule and guidelines for permanent deletion of biometric data publicly available.

49. Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' biometric data when the purpose for collecting or obtaining such data has been satisfied

or within three years of the individual's last interaction with the company.

50. Defendant did not have a retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA when it collected Plaintiffs' "biometric identifiers" or "biometric information." *See* 740 ILCS § 15(a).

51. Plaintiffs have never seen, been able to access, or been informed of any publicly available biometric data retention policy or guidelines developed by Defendant, nor have they ever seen, been able to access, or been informed of whether Defendant would ever permanently delete their biometric data.

52. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet failed to comply with Section 15(a) of BIPA as it relates to Plaintiffs.

53. Alternatively, Defendant negligently failed to comply with Section 15(a) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(a) of BIPA. 740 ILCS 14/15(e)(1).

**WHEREFORE,** Plaintiffs, Anthony Benson and Ulysses Ballard, respectfully request that this Honorable Court provide Plaintiffs with the following relief:

a. Declaring that Defendant violated Section 15(a) of BIPA;

b. Requiring Defendant to comply with BIPA's requirements for the collection, storage, use, and retention and destruction of biometric identifiers and biometric information as described herein;

c. Requiring Defendant to destroy biometric identifiers or biometric information pursuant to and in compliance with Section 15(a) of BIPA;

d. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(a) of BIPA pursuant to 740 ILCS § 14/20(1);

e. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(a) of BIPA pursuant to 740 ILCS § 14/20(2);

f. Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

g. Awarding pre- and post-judgment interest as allowable; and

h. Enjoining Defendant from further violations of Section 15(a) of BIPA.

## COUNT TWO

### Violation of §15(b) of BIPA
[Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information]

54. Plaintiffs restate paragraphs 1 through 41 of the complaint as if set out here in full.

55. BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 740 ILCS 14/15(b) (emphasis added).

56. "A party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan or collection." *Cothron v. White Castle System, Inc.*, 2023 IL 128004 ¶ 24 (internal citation omitted).

57. Informed consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

58. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS 14/10.

59. Each Plaintiff is an individual who had "biometric identifiers" (in the form of scans of their fingerprint or hand geometry) collected by Defendant. *See* 740 ILCS 14/10.

60. The Plaintiffs' biometric identifiers, and all data derived from them, including any mathematical representations of the biometric identifiers, were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

61. Defendant collected, captured or otherwise obtained Plaintiffs' biometric identifiers or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

62. Defendant did not inform Plaintiffs in writing that their biometric identifiers or biometric information was being collected, captured or otherwise obtained, or the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored, or used before collecting, capturing, otherwise obtaining, storing or using them as required by 740 ILCS 14/15(b)(1)-(2).

63. By collecting, capturing, storing, using or otherwise obtaining Plaintiffs' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' privacy in their biometric identifiers and/or biometric information as set forth in BIPA *each time* the Defendant, collected, captured, stored, used or otherwise obtained their biometric identifiers or information. *See* 740 ILCS 14/1, *et seq.*; *Cothron v. White Castle System, Inc.*, 2023 IL 128004 ¶

"[T]he plain language of section 15(b) and 15(d) demonstrates that such violations occur with every scan or transmission." *Id.* At ¶ 30.

64. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet failed to comply with Section 15(b) of BIPA as it relates to Plaintiffs.

65. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(b) of BIPA. 740 ILCS 14/15(e)(1).

**WHEREFORE**, Plaintiffs, Anthony Benson and Ulysses Ballard, respectfully requests that this Honorable Court provide Plaintiffs with the following relief:

a. Declaring that Defendant violated Section 15(b) of BIPA;

b. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(b) of BIPA pursuant to 740 ILCS § 14/20(1);

c. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(b) of BIPA pursuant to 740 ILCS § 14/20(2);

d. Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

e. Awarding pre- and post-judgment interest as allowable; and

f. Enjoining Defendant from further violations of Section 15(b) of BIPA.

### COUNT THREE

**Violation of §15(d) of BIPA**
**[Disclosure of Biometric Identifiers and Information Without Obtaining Consent]**

66. Plaintiffs restate paragraphs 1 through 41 of the complaint as if set out here in full.

67. BIPA prohibits private entities from disclosing, redisclosing or otherwise disseminating a person's or customer's biometric identifier or biometric information without obtaining consent for that disclosure, redisclosure or dissemination, with limited exceptions, none of which are appliable here. 740 ILCS 14/15(d).

68. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS 14/10.

69. Each Plaintiff is an individual who had their "biometric identifiers" (in the form of scans of fingerprints or hand geometry) collected by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

70. The Plaintiffs' biometric identifiers, and all data derived from them, including any mathematical representations of the biometric identifiers, were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

71. By utilizing Paycom's biometric time clock or payroll management system, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers and/or biometric information of Plaintiffs to at least Paycom without obtaining the Plaintiffs' consent required by 740 ILCS 14/15(d)(1).

72. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' biometric identifiers and biometric information without their consent as described herein, Defendant violated BIPA *each time* there was a disclosure, redisclosure or dissemination of the Plaintiffs' biometric identifiers in violation of Plaintiffs' right to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

73. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet failed to

comply with Section 15(d) of BIPA.

74. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(d) of BIPA.

75. "[T]he plain language of section 15(d) supports the conclusion that a claim accrues upon each transmission of a person's biometric identifier or information without prior informed consent." *White Castle System, Inc.*, 2023 IL 128004 at ¶ 29.

**WHEREFORE,** Plaintiffs, Anthony Benson and Ulysses Ballard, respectfully requests that this Honorable Court provide Plaintiffs with the following relief:

a. Declaring that Defendant violated Section 15(d) of BIPA;

b. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(d) of BIPA pursuant to 740 ILCS § 14/20(1);

c. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(d) of BIPA pursuant to 740 ILCS § 14/20(2);

d. Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

e. Awarding Plaintiffs pre- and post-judgment interest, to the extent allowable; and

f. Enjoining Defendant from further violations of Section 15(d) of BIPA.

## JURY DEMAND

Plaintiffs hereby respectfully demand a trial by jury.

Dated: April 26, 2024.

*Respectfully submitted,*

**ANTHONY BENSON and ULYSSES BALLARD**

*/s/ Adam J. Feuer*
Majdi Hijazin - # 6284879
Adam J. Feuer - # 6307792
Samuel L. Eirinberg - # 6328842
Cook County Attorney Code: 100751
DJC Law, PLLC
140 S. Dearborn Street, Ste. 1610
Chicago, Illinois 60603
(872) 804-3400
adam@teamjustice.com
majdi@teamjustice.com
sam@teamjustice.com
notices@teamjustice.com
*Counsel for Plaintiffs*